UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
David Katz,                             )
                                        )
                Plaintiff               )
                                        )          CIVIL ACTION NO:
        v.                              )          _____
                                        )
Apple, Inc.                             )
                Defendant               )
_____ )

## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, David Katz ("Mr. Katz" or "Plaintiff"), is a 53-year old male resident of the State of New York residing at 50 W 34th Street, Apartment 19a6, New York, NY 10001.

2.      Defendant, Apple, Inc. ("Apple," the "Defendant," or the "Company") is a foreign for-profit corporation incorporated under California law.  Apple's principal office is located at 1 Infinite Loop, Cupertino, California 95014.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 because Mr. Katz has brought a claim pursuant to the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1201 et seq., the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 et seq., and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The court may exercise supplemental jurisdiction over Mr. Katz's state (and city) law claims.  28 U.S.C. §1367.

4.      This Court has jurisdiction over Defendant Apple because the Company purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Katz) in New York.  Indeed, the Plaintiff was employed by Apple in the State of New York, was managed by Apple in the State of New York, and was terminated by Apple in the State of New York.

5.      Venue is appropriate in the Southern District of New York as the Plaintiff lives in the Southern District of New York and/or the acts or omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.

### Statement of Facts

6.      On or around July 28, 2003, Mr. Katz was hired as a Sales Specialist by Apple working out of the Defendant's store at 103 Prince Street, New York, NY 10012.

7.      At all relevant times, the Defendant employed 20 or more employees for an average of 30 or more hours per week in each year. As such, the Defendant at all relevant times was a covered employer under the Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), the New York City Human Rights Law, and the New York State Human Rights Law.

8.      Upon information and belief, Mr. Katz was one of the oldest employees working at the Defendant's Prince Street location.

9.      At all relevant times, the Defendant employed 50 or more employees during 20 or more calendar weeks during the relevant calendar years.

10.      Moreover, at all relevant times, the Defendant employed 50 or more employees within 75 miles of where Mr. Katz worked in New York, NY.

11.     Accordingly, at all relevant time, the Defendant was a covered employer under the Family and Medical Leave Act ("FMLA").

12.     At all relevant times (subsequent to late 2004), Mr. Katz was employed by the Defendant for a period greater than 12 months and had worked in excess of 1250 hours during the previous 12-month period.

13.     As such, at all relevant times, Mr. Katz was an eligible employee under the FMLA.

14.     At all relevant times, Mr. Katz was a qualified employee and performed his work satisfactorily.

15.     Originally, Mr. Katz was hired as a part-time employee.  However, approximately six months later, Mr. Katz was promoted to a full-time employee due to his strong job performance.

16.     Indeed, Mr. Katz regularly had excellent performance reviews and frequently achieved goals, often making him one of the Defendant's top performers at his location. In or around 2007, as a result of Mr. Katz's continued strong performance, Mr. Katz was promoted to Manager.

17.     Mr. Katz has been diagnosed with chronic debilitating migraines (hereinafter, his "disability").

18.     At all relevant times, Mr. Katz's migraines were an impairment that, especially during symptomatic periods, substantially limited one or more of his major life activities, including, but not limited to, walking, concentrating, and interacting with others. Furthermore, Mr. Katz's migraines were an impairment which substantially limited the operation of one or more of his bodily functions, including, but not limited to, his neurological functions.

19.     Indeed, Mr. Katz's migraines can be so severe that he cannot stand or walk at times.

20.     Accordingly, Mr. Katz's migraines are and were a disability under state, city, and federal law. As such, Mr. Katz was and is disabled under state, city, and federal law.

21.     Mr. Katz did not disclose his disability to the Defendant prior to him being hired by Apple.

22.     In or around 2009, Mr. Katz informed the Defendant of his disability.

23.     At or around this same time, Mr. Katz requested the reasonable accommodation of temporary short leaves of absence when his disability flared up.  This request for temporary leaves of absence also counted as a request for intermittent FMLA leave.

24.     The Defendant granted Mr. Katz this requested reasonable accommodation, including in the form of intermittent FMLA leave.

25.     In or around 2014, Apple brought in a new management team for the New York store where Mr. Katz worked. This team included Store Leader David Hunt ("Mr. Hunt"), Flag Leader Gunnar Sjursen ("Mr. Sjursen"), and Store Leader Kendra Telhiard ("Ms. Telhiard"). (collectively, the "Management Team").

26.     Upon information and belief, each of the individuals on the Management Team are non-disabled and/or younger than Mr. Katz.

27.     Once under the supervision of the Management Team, Mr. Katz made a point, including through verbal and written communications, of clearly disclosing his disabilities to the Management Team.

28.     Additionally, Sedgwick, the Defendant's medical leave provider, would also notify the Management Team of all Mr. Katz's medical leaves and/or his approval for leave based on his disabilities.

29.     However, almost immediately, it became clear that the Management Team was hostile towards Mr. Katz because he was older and was disabled and/or because Mr. Katz requested and/or utilized one or more reasonable accommodations, including temporary disability-related leaves of absences (which were also protected under the FMLA).

30.     Indeed, the Management Team repeatedly chastised and pressured Mr. Katz about the days he was out due to his disability.

31.     In response to these repeated negative remarks about his disability-related accommodations, Mr. Katz raised protected concerns about disability-related harassment and discrimination to Mr. Hunt and Mr. Sjursen.

32.     Seemingly in retaliation for Mr. Katz raising protected concerns, the Management Team ostracized Mr. Katz, leaving him out of meetings, and giving him unjustified bad reviews.

33.     Accordingly, Mr. Katz raised further protected concerns regarding discrimination, including to Mr. Hunt and Mr. Sjursen, questioning why his evaluations had gone from outstanding to negative, seemingly for no other reason than his utilization of disability-related accommodations and/or expression of protected concerns.

34.     However, instead of addressing Mr. Katz's concerns, the Management Team threatened in a retaliatory manner to demote Mr. Katz, despite the fact that he was satisfactorily performing his job duties.

35.     It was clear, due to the MT's reaction to Mr. Katz's intermittent disability-related days off, that the managers were unhappy about Mr. Katz's disability and/or his accommodations/FMLA leave and that they likely would retaliate against him.

36.     Indeed, as part of this discriminatory and/or retaliatory treatment, Mr. Katz was denied the ability to participate in a Career Experience with Apple Marketing.  Indeed, despite following all necessary procedures to apply for the Career Experience with Apple Marketing, Mr. Katz never received a response from the Management Team or the Company regarding his application.

37.     Importantly, other, younger, non-disabled employees were given Career Experiences, including Rebecca Essain.

38.     Between 2015 and 2018, Mr. Katz's painful migraines became more frequent.

39.     In or around 2016, Amanda Reyes ("Reyes") began working for the Company at the New York Store as Senior Manager.  Also in or around 2016, Brian Sallustro ("Sallustro") began working for the Company at the New York Store as a Manager.  Accordingly, beginning in or around 2016, Reyes and Sallustro became part of the Management Team.

40.     In 2017 and/or 2018, the Management Team demoted Mr. Katz and decreased his salary, which resulted in an annual loss of at least $30,000 for Mr. Katz.

41.     Notably, this demotion was clearly motivated by the Defendant's (specifically the Management Team's) bias against Mr. Katz based on his disability and/or age.

42.     Indeed, this demotion came after the Management Team had repeatedly expressed frustration with Mr. Katz for taking time off due to his disabilities.

43.     Likewise, this demotion came after Mr. Katz had been subjected to adverse actions because of his disability, including negative evaluations, and after Mr. Katz had voiced protected concerns regarding the Management Team's discriminatory reviews of Mr. Katz.

44.     Further, after demoting Mr. Katz, Mr. Katz was, upon information and belief, replaced by a similarly or less qualified non-disabled and younger individual.

45.     In this demoted position, Mr. Katz's job involved the maintenance of the store and/or the disposing of items that were no longer in use at the store.

46.     During the period of time after this discriminatory and/or retaliatory demotion, Mr. Katz's migraine symptoms became more common, which required him to need more frequent days off.

47.     Despite needing more days off, Mr. Katz continued to stay within a reasonable amount of time off (and stayed within his FMLA allocation).

48.     Furthermore, Mr. Katz also followed all policies and procedures for calling out and documenting his disability-related need for time off.

49.     In or around September 2018, Mr. Katz noticed there were old, unused machines in the store.

50.     Shortly after noticing these machines, Mr. Katz spoke with his supervisor and asked what should be done with the machines.

51.     Mr. Katz was informed that he should await further instructions before taking any action with these machines.

52.     In accordance with this instruction, Mr. Katz held off on removing the old, unused machines from the store.

53.     In or around April 2019, Mr. Katz was instructed by Manager Sallustro to dispose of any unused items in the store, including the old, unused machines in the store.

54.     Importantly, Senior Manager Reyes had directed that Sallustro should take over the supervision of Mr. Katz.

55.     Accordingly, it was made clear to Mr. Katz that Sallustro was serving in a supervisory capacity over him and, as such, Mr. Katz had to follow Sallustro's instructions (or risk being reprimanded for insubordination).

56.     Upon information and belief, Sallustro was not disabled and/or was younger than Mr. Katz.

57.     Accordingly (and in compliance with Manager Sallustro's instructions), Mr. Katz did dispose of the machines.

58.     On or around May 13, 2019, Mr. Katz emailed Brian Niccum ("Mr. Niccum"), Calibration Fixture Support & Genius Support, and updated him (Mr. Niccum) as to the status of the old, unused machines.

59.     In response to learning the machines had been scrapped, Mr. Niccum thanked Mr. Katz and said, "We'll inform the Retail Operations and Inventory teams that these assets have been scrapped."

60.     Mr. Katz was not reprimanded for destroying the machines at this time, nor was Mr. Katz told he had done anything wrong by complying with Manager Sallustro's instructions.

61.     Due to a flare-up of symptoms related to Mr. Katz's migraine disability, Mr. Katz took off the last three days of April 2019 and the first few days of May 2019 as intermittent FMLA leave. Mr. Katz followed all appropriate call-out procedures related to the utilization of this intermittent FMLA time.

62.     Throughout Mr. Katz's employment, Mr. Katz was subjected to age-related comments directed at him in a derogatory manner from younger members of the Management Team and other employees. For example, Mr. Katz was often told he was "so old" by Rebekah Esain ("Ms. Esain"), a younger, non-disabled employee.

63.     In response to these repeated remarks about his age and the discriminatory and/or retaliatory treatment he was subjected to, Mr. Katz raised protected concerns about the age-related harassment and discrimination, making it clear that this treatment and/or the comments were unwelcome and needed to stop. However, nothing was done to address his concerns.

64.     Instead, Mr. Katz was retaliated against seemingly for raising protected concerns.

65.     For example, on or around January 15, 2019, Mr. Katz sent an email to the Defendant's human resources department.

66.     In this email Mr. Katz made clear that he felt humiliated and degraded and that the younger, non-disabled Ms. Esain was being assigned his job duties by Senior Manager Reyes. Indeed, Mr. Katz clearly asked Mr. Sjursen why all of his duties were being given to the younger, non-disabled Ms. Esain.

67.     However, despite Mr. Katz's protected concerns nothing was done to address the ongoing discrimination, harassment, and/or retaliation as the conduct continued.

68.     Then, in a further act of retaliation, in or around the beginning of June 2019, Mr. Hunt spoke to Mr. Katz and let Mr. Katz know he was unhappy about Mr. Katz's disability-related absences and wanted them to stop.

69.     Mr. Hunt thus made clear that he was seeking to prevent Mr. Katz from utilizing previously approved disability-related accommodations and was implicitly threatening Mr. Katz with retaliatory consequences if he continued to utilize such disability accommodations.

70.     These disability-related absences were protected under city, state, and federal law.

71.     Importantly, at this time, Mr. Katz was experiencing debilitating migraines relatively frequently.  Although Mr. Katz had ostensibly been approved to take time off (including under the FMLA), due to the threatening works, conduct, and attitude of Mr. Hunt and management more broadly, it was clear to Mr. Katz that he was able to take time off related to his disability without risking retaliation, and as a consequence, Mr. Katz periodically felt that he was unable to safely take time off (and periodically did not take time off that he wished to utilize) when experiencing flare-ups of disability symptoms due to the discouragement and threats of management, including Mr. Hunt.

72.     Shortly after Mr. Hunt expressed his displeasure regarding Mr. Katz's utilization of protected disability-related absences, Mr. Katz conveyed protected concerns to Mr. Hunt that it was improper for the Company to pressure him (Mr. Katz) to stop utilizing disability-related accommodations/FMLA and reminded Mr. Hunt that these absences were disability accommodations and were protected under city, state, and federal law.

73.     Neither Mr. Hunt nor anyone else at the Company engaged in any interactive dialogue with Mr. Katz concerning the seeming attempt by management to revoke Mr. Katz's previously granted disability-related accommodations (and to interfere with his FMLA rights) and likewise never sought to explore whether any alternative accommodations could have been established.

74.     Instead management treated Ms. Katz in an increasingly negative manner that was clearly caused by discriminatory and/or retaliatory bias against him.

75.     Approximately two weeks later, on or around June 17, 2019, Mr. Hunt and Mr. Sjursen abruptly terminated Mr. Katz.  Upon information and belief, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

76.     The termination papers provided to Mr. Katz reference alleged "Violation of Apple's Business Conduct Policy."

77.     The Company has subsequently alleged that Mr. Katz violated Apple's business conduct policy by throwing out machines without partnering.  The machines referenced by the termination paperwork were the machines Mr. Katz had scrapped approximately four months before at the instruction of Manager Sallustro.

78.     As noted above, prior to throwing out the machines, Mr. Katz spoke with his supervisors in or around September 2018 about the unused, "old" machines in the store and sought direction regarding what was to be done with the machines.

79.     In fact, in or around February 2019, Mr. Katz had been instructed to scrap these machines by Manager Sallustro.

80.     Thus, Mr. Katz had "partnered" related to the disposal of the machines and had been merely following orders.  Likewise, Mr. Katz had not violated Apple's business conduct policy.

81.     Further, despite informing Apple many weeks before that he had complied with Manager Sallustro's instructions and scrapped the machines under orders from management, Mr. Katz was not disciplined for this incident in or around February, March, April, or May of 2019.

82.     Indeed, on or around May 13, 2019, Mr. Katz had sent an email to Mr. Niccum updating him on the status of the machines. In response, on or around May 13, 2019, Mr.

Niccum replied "thanks for letting us know. We'll inform the Retail Operations and Inventory teams that these assets have been scrapped."

83. Thus, the idea that Apple believed that Mr. Katz had committed any meaningful misconduct related to the disposal of the machines is contradicted by the fact that Apple did not discipline Mr. Katz close in time to when the actual conduct occurred, and instead merely made reference to this conduct substantially later in a clearly pretextual attempt to justify the improper termination of Mr. Katz.

84. Notably, the Defendant did not conduct a meaningful or otherwise sufficient investigation into the issue before terminating Mr. Katz's employment.  In contrast, the Defendant routinely conducted thorough investigations into any allegations of misconduct by non-disabled and/or younger employees before taking any job action against them. Thus, Mr. Katz was subjected to improperly harsher treatment compared to other similarly situated comparators.

85. Moreover, upon information and belief, the Defendant has a progressive discipline policy, and regularly has utilized progressive discipline, instead of summarily firing, non-disabled and/or younger employees who were accused of misconduct similar or more severe than that which Mr. Katz was (falsely) accused of.

86. In contrast, Mr. Katz was treated more harshly, and the Defendant failed to follow its progressive discipline policy and standard practices with regard to Mr. Katz when it summarily fired him without first utilizing progressive discipline.

87. For example, on or around early 2019, Mr. Sallustro (who was younger than Mr. Katz) disposed of black curtains that the store used for product launches.

88. Mr. Sallustro was told that the curtains should not be disposed of.

89.     Mr. Sallustro disposed of the curtains anyway.

90.     Despite violating explicit instructions to not throw away the curtains, and despite improperly disposing of Company property, Mr. Sallustro was not terminated.

91.     Furthermore, on or around February 11, 2019, Ms. Esain had the City-painted markings removed from the sidewalk outside the store, which was illegal.

92.     Because the markings were illegally removed due to Ms. Esain's misconduct, if the City government or any other contractor were to dig in that area, it could cause an explosion or other dangerous situation resulting in injury and/or death.

93.     Despite this misconduct (and despite the Company being aware of it), Ms. Esain was not terminated for this action.

94.     Moreover, on or around June 3, 2019, Ms. Esain (a younger and/or non-disabled employee) purchased food for the staff. Ms. Esain was not disciplined for this action, whereas Mr. Katz was disciplined for the same action.

95.     As noted, Mr. Katz was treated more harshly and subjected to different standards than younger and/or non-disabled employees. For example, on or around May 25, 2019, Mr. Katz utilized a George Forman grill in the back of the store near where other cooking appliances were located and where other younger non-disabled employees had often used the grill in the past.

96.     Although he was not disciplined for the use of the grill in May 2019, later (indeed, around the time of his subsequent termination) management suddenly and implausibly alleged that Mr. Katz had created an alleged safety issue through his earlier use of the George Forman grill.

97. Notably, in the past, other non-disabled and younger employees had used the George Foreman grill and other cooking appliances in the store, and had also committed safety violations which the Defendant was aware of, but no disciplinary actions were taken against those younger and/or non-disabled employees.

98. Additionally, there were numerous safety and equipment failures by younger and/or non-disabled staff, which Mr. Katz reported in keeping with his duties under Company policies, that did not result in termination or even discipline of the other younger and/or non-disabled employees.

99. For example, several months before the termination of Mr. Katz's employment, Mr. Katz raised concerns to the Management Team regarding Reyes and Essain. Indeed, Mr. Katz had noticed that both Reyes and Essain were moving materials into the sprinkler room and blocking access to water valves, gauges, and emergency controls, which was a violation of New York law. Although Mr. Katz reported these concerns to the Management Team, neither Reyes or Essain were disciplined or terminated for their violations of New York law.

100. The Defendant likewise improperly denied and/or revoked one or more disability-related reasonable accommodations that Mr. Katz requested.

101. On or around November 5, 2019, Mr. Katz timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR"), which was cross filed with the United States Equal Employment Opportunity Commission ("EEOC").

102. On or around April 3, 2020, the NYCCHR issued a Notice of Administrative Closure of Mr. Katz's charge.

103. On or around September 18, 2020, Mr. Katz received a Notice of Right to Sue letter from the EEOC.

104.    This lawsuit is timely filed.

## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Mr. Katz v. Apple, Inc.**

105.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

106.    The Defendant is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

107.    Mr. Katz suffers (and at all relevant times suffered) from disabilities, including, chronic debilitating migraines.

108.    At all relevant times, Mr. Katz's chronic debilitating migraines were an impairment that substantially limited one or more of his major life activities, including, but not limited to, walking, concentrating, and interacting with others. Furthermore, Mr. Katz's chronic debilitating migraines were an impairment which substantially limited the operation of one or more of his bodily functions, including, but not limited to, the functioning of his neurological system. Indeed, Mr. Katz's migraines could be so severe that he cannot stand or walk. Accordingly, Mr. Katz is (and at all relevant times was) disabled under the NYCHRL.

109.    At all relevant times, Mr. Katz was a qualified employee and was capable of performing the essential functions of his job with and/or without one or more reasonable accommodations.

110.    For example, Mr. Katz was still able to perform the essential functions of his position with and/or without reasonable accommodations, including, but not limited to,

coordinating with the proper vendors regarding matters such as damaged building parts, performing building walkthroughs, and accurately keeping stock of inventory.

111.    Mr. Katz disclosed his disabilities to the Defendant and/or the Defendant was aware of Mr. Katz's disabilities. Furthermore, the Defendant regarded Mr. Katz as disabled.

112.    Mr. Katz requested, utilized, and/or sought to utilize disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, one or more temporary leaves of absence, intermittent FMLA leave, and/or disability-related days off.

113.    The disability-related accommodations requested and/or utilized by Mr. Katz did not pose an undue burden on Defendant.

114.    The Defendant failed to engage in an interactive dialogue and unlawfully denied/revoked one or more of Mr. Katz's accommodation requests both directly and by pressuring Mr. Katz to not utilize his previously granted accommodations, including, but not limited to, a temporary leave of absence, intermittent FMLA leave, and/or disability-related days off.

115.    The Defendant discriminated against Mr. Katz due to his disabilities by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his non-disabled colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

116.     Non-disabled employees of the Company were treated more favorably than Mr. Katz, including through not being improperly harassed, not being subjected to a hostile work environment, not being held to a higher standard, not being issued unwarranted disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty reallocation, and/or reduced pay, not being denied the benefit of progressive discipline/performance management prior to termination, and/or not being terminated.

117.     Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

118.     Upon information and belief, after terminating his employment, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

119.     The Defendant has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

120.     As a direct and proximate result of the Defendant's violations of the NYCHRL, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

121.     Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Mr. Katz v. Apple, Inc.**

122.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

123.    The Defendant, Apple, Inc., is an employer under the definition of the New York State Human Rights Law because, at all relevant times, it employed four or more persons.

124.    Mr. Katz suffers (and at all relevant times suffered) from disabilities, including, chronic debilitating migraines.

125.    At all relevant times, Mr. Katz's chronic debilitating migraines were an impairment that substantially limited one or more of his major life activities, including, but not limited to, walking, concentrating, and interacting with others. Furthermore, Mr. Katz's chronic debilitating migraines were an impairment which substantially limited the operation of one or more of his bodily functions, including, but not limited to, the functioning of his neurological system. Indeed, Mr. Katz's migraines could be so severe that he could not stand or walk. Accordingly, Mr. Katz is (and at all relevant times was) disabled under the New York State Human Rights Law.

126.    At all relevant times, Mr. Katz was a qualified employee and was capable of performing the essential functions of his job with and/or without one or more reasonable accommodations.

127.    For example, Mr. Katz was still able to perform the essential functions of his position with and/or without reasonable accommodations, including, but not limited to,

coordinating with the proper vendors regarding matters such as damaged building parts, performing building walkthroughs, and accurately keeping stock of inventory.

128.     Mr. Katz disclosed his disabilities to the Defendant, and/or the Defendant was aware of Mr. Katz's disabilities. Furthermore, the Defendant regarded Mr. Katz as disabled.

129.     Mr. Katz requested, utilized, and/or sought to utilize disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, one or more temporary leaves of absence, intermittent FMLA leave, and/or disability-related days off.

130.     The disability-related accommodations requested and/or utilized by Mr. Katz did not pose an undue burden on Defendant.

131.     The Defendant failed to engage in an interactive dialogue and unlawfully denied/revoked one or more of Mr. Katz's accommodation requests both directly and by pressuring Mr. Katz to not utilize his previously granted accommodations, including, but not limited to, a temporary leave of absence, intermittent FMLA leave, and/or disability-related days off.

132.     The Defendant discriminated against Mr. Katz due to his disability by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his non-disabled colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

133.     Non-disabled employees of the Defendant were treated more favorably than Mr. Katz including through not being improperly harassed, not being subjected to a hostile work environment, not being held to a higher standard, not being issued unwarranted disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty reallocation, and/or reduced pay, not being denied the benefit of progressive discipline/performance management prior to termination, and/or not being terminated.

134.     Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

135.     Upon information and belief, after terminating his employment, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

136.     As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

137.     Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

**COUNT III**

**(Disability Discrimination and Failure to Accommodate in Violation of the
Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Katz v. Apple, Inc.**

138.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

139.    At all relevant times, the Defendant was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

140.    Mr. Katz suffers (and at all relevant times suffered) from disabilities, including, chronic debilitating migraines.

141.    At all relevant times, Mr. Katz's chronic debilitating migraines Mr. Katz's chronic debilitating migraines were an impairment that substantially limited one or more of his major life activities, including, but not limited to, walking, concentrating, and interacting with others. Furthermore, Mr. Katz's chronic debilitating migraines were an impairment which substantially limited the operation of one or more of his bodily functions, including, but not limited to, the functioning of his neurological system. Indeed, Mr. Katz's migraines could be so severe that he could not stand or walk.   Accordingly, Mr. Katz was disabled under the ADA.

142.    At all relevant times, Mr. Katz was a qualified employee and was capable of performing the essential functions of his job with and/or without one or more reasonable accommodations.

143.    For example, Mr. Katz was still able to perform the essential functions of his position with and/or without reasonable accommodations, including, but not limited to, coordinating with the proper vendors regarding matters such as damaged building parts, performing building walkthroughs, and accurately keeping stock of inventory.

144.    Mr. Katz disclosed his disabilities to the Defendant and/or the Defendant was aware of Mr. Katz's disabilities. Furthermore, the Defendant regarded Mr. Katz as disabled.

145.    Mr. Katz requested, utilized disability-related, and/or sought to utilize reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, on or more temporary leaves of absence, intermittent FMLA leave, and/or disability-related days off.

146.    The disability-related accommodations requested and/or utilized by Mr. Katz did not pose an undue burden on Defendant.

147.    The Defendant failed to engage in an interactive dialogue and unlawfully denied/revoked one or more of Mr. Katz's accommodation requests both directly and by pressuring Mr. Katz to not utilize his previously granted accommodations, including, but not limited to, a temporary leave of absence, intermittent FMLA leave, and/or disability-related days off.

148.    The Defendant discriminated against Mr. Katz due to his disabilities by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his non-disabled colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

149.    Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

150.    Upon information and belief, after terminating his employment, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled employee.

151.    The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

152.    Notably, at the time of Mr. Katz's termination, the Defendant employed at least 501 employees.

153.    As a direct and proximate result of the Defendant's violation of the ADA, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

154.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and costs.

## COUNT IV

### (Age Discrimination in Violation of 29 U.S.C. §§ 621 et seq.)

### Mr. Katz v. Apple, Inc.

155.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

156.    The Defendant is an employer under the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (hereinafter, "ADEA") because the Defendant is an entity engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks during the relevant years.

157.    At all relevant times, Mr. Katz was over 40 years old.

158.    The Defendant, harassed and discriminated against the Mr. Katz with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Katz's age and/or because Mr. Katz was over 40 years old.

159.    More specifically, because of Mr. Katz's age, the Defendant subjected the Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

160.    Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz in management with a lesser or similarly qualified, younger and/or non-disabled employee.

161.    Upon information and belief, the Defendant replaced Mr. Katz with a lesser or similarly qualified, younger and/or non-disabled employee.

162.    The Defendant willfully violated the ADEA because the Defendant knew or should have known its conduct was prohibited by Federal law and/or the Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

163.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

164.     Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, liquidated damages (double damages), compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, interest, attorneys' fees, and costs.

## COUNT V

### (Age Discrimination in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)

### Mr. Katz v. Apple, Inc.

165.     Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

166.     At all relevant times, Mr. Katz was over 40 years old.

167.     The Defendant, harassed and discriminated against the Mr. Katz with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Katz's age and/or because Mr. Katz was over 40 years old.

168.     More specifically, the Defendant discriminated against Mr. Katz due to his age by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

169.     Younger employees of the Company were treated more favorably than Mr. Katz, including through not being improperly harassed, not being subjected to a hostile work environment, not being held to a higher standard, not being issued unwarranted disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty reallocation, and/or reduced pay, not being denied the benefit of progressive discipline/performance management prior to termination, and/or not being terminated.

170.     Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, younger employee.

171.     Upon information and belief, after terminating his employment, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

172.     The Defendant willfully violated the New York State Human Rights Law because the Defendant knew or should have known its conduct was prohibited by Federal law and/or the Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

173.     As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

174.     Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and costs.

## COUNT VI

### (Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)

### Mr. Katz v. Apple, Inc.

175.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

176.    The Defendant is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

177.    At all relevant times, Mr. Katz was over 40 years old.

178.    The Defendant, harassed and discriminated against Mr. Katz with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Katz's age and/or because Mr. Katz was over 40 years old.

179.    More specifically, the Defendant discriminated against Mr. Katz due to his age by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

180.    Younger employees of the Company were treated more favorably than Mr. Katz, including through not being improperly harassed, not being subjected to a hostile work

environment, not being held to a higher standard, not being issued unwarranted disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty reallocation, and/or reduced pay, not being denied the benefit of progressive discipline/performance management prior to termination, and/or not being terminated.

181.    Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

182.    Upon information and belief, after terminating his employment, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

183.    The Defendant willfully violated the New York City Human Rights Law because the Defendant knew or should have known its conduct was prohibited by Federal law and/or the Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

184.    As a direct and proximate result of the Defendants' violations of the New York City Human Rights Law, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

185.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and costs.

## COUNT VII

**(Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Mr. Katz v. Apple, Inc.**

186.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

187.    Mr. Katz engaged in protected activity under the New York State Human Rights Law, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Katz's disabilities and/or age; (ii) requesting reasonable accommodations for disabilities which were intended to allow Mr. Katz to perform the essential functions of his job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Company to provide disability-related reasonable accommodations and/or the failure of the Company to engage in an interactive dialogue related to Mr. Katz's disabilities and requested accommodations.

188.    The disability-related accommodations which Defendant retaliated against Mr. Katz for requesting and/or utilizing included, but were not limited to, one or more temporary leaves of absence, intermittent FMLA leave, and/or disability-related days off.

189.    Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Katz's exercising of or enjoyment of rights granted by The New York State Human Rights Law.

190.    More specifically, the Defendant discriminated against Mr. Katz due to his disability and/or  age by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a

discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's

job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the

full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

191.    Non-disabled and/or younger employees of the Company were treated more

favorably than Mr. Katz, including through not being improperly harassed, not being subjected to

a hostile work environment, not being held to a higher standard, not being issued unwarranted

disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty

reallocation, and/or reduced pay, not being denied the benefit of progressive

discipline/performance management prior to termination, and/or not being terminated.

192.    Upon information and belief, after the Defendant had demoted Mr. Katz from

management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled

and/or younger employee.

193.    Defendant's actions were willful, wanton, reckless, and/or involved a conscious

disregard of the rights of Mr. Katz and/or conduct so reckless to amount to such disregard.

194.    As a direct and proximate result of Defendant's violation of The New York State

Human Rights Law, Mr. Katz has suffered and continues to suffer damages, including, but not

limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain

and suffering, loss of enjoyment of life, and emotional damages.

195.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to,

lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning

capacity, other financial damages, liquidated damages (double damages), uncapped

compensatory damages (including, but not limited to, future pecuniary losses, emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT VIII

### (Retaliation in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)

### Mr. Katz v. Apple, Inc.

196.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

197.    Mr. Katz engaged in protected activity under the NYCHRL, including, but not

limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity

related to the harassing and discriminatory actions taken by the Defendant due to Mr. Katz's

disabilities and/or age; (ii) requesting reasonable accommodations for disabilities which were

intended to allow Mr. Katz to perform the essential functions of his job; and/or (iii) opposing,

voicing protected concerns, and/or engaging in other protected activity related to the failure of

the Defendants to provide disability-related reasonable accommodations and/or the failure of the

Defendants to engage in an interactive dialogue related to Mr. Katz disabilities and requested

accommodations.

198.    The disability-related accommodations which Defendants retaliated against Mr.

Katz for requesting and/or utilizing included, but were not limited to, one or more temporary

leaves of absence, intermittent FMLA leave, and/or disability-related days off.

199.    Defendants unlawfully coerced, intimidated, threatened, and/or interfered with

Mr. Katz's exercising of or enjoyment of rights granted by the NYCHRL.

200.    More specifically, the Defendant discriminated against Mr. Katz due to his

disability and/or age by subjecting Mr. Katz to adverse actions, including, but not limited to,

subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to

a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a

discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's

job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the

full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

201.    Non-disabled and/or younger employees of the Company were treated more

favorably than Mr. Katz, including through not being improperly harassed, not being subjected to

a hostile work environment, not being held to a higher standard, not being issued unwarranted

disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty

reallocation, and/or reduced pay, not being denied the benefit of progressive

discipline/performance management prior to termination, and/or not being terminated.

202.    Upon information and belief, after the Defendant had demoted Mr. Katz from

management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled

and/or younger employee.

203.    Defendant has engaged in retaliatory conduct with willful or wanton negligence,

recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount

to such regard.

204.    As a direct and proximate result of Defendant's violation of The New York City

Human Rights Law, Mr. Katz has suffered and continues to suffer damages, including, but not

limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain

and suffering, loss of enjoyment of life, and emotional damages.

205.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to,

lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning

capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT IV

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Katz v. Apple, Inc.**

206.     Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

207.     Mr. Katz engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding an illegal hostile and harassing work environment related to his disability; (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendant due to Mr. Katz's disability;  (iii) requesting one or more reasonable accommodations for his disability which were intended to allow Mr. Katz to perform the essential functions of his job; and/or (iv) opposing, voicing protected concerns, and/or engaging in other protected activity regarding the Defendant's denial/revocation of requested disability-related accommodations which Mr. Katz requested and to which he was entitled.

208.     The disability-related accommodations which Defendant retaliated against Mr. Katz for requesting and/or utilizing included, but were not limited to, one or more temporary leaves of absence, intermittent FMLA leave, and/or disability-related days off.

209.     The Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Katz's exercising of, or enjoyment of, one or more rights granted by the ADA.

210. More specifically, the Defendant discriminated against Mr. Katz due to his disability by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

211. Non-disabled employees of the Company were treated more favorably than Mr. Katz, including through not being improperly harassed, not being subjected to a hostile work environment, not being held to a higher standard, not being issued unwarranted disciplinary notices and/or unjustified poor performance reviews, not being subjected to job duty reallocation, and/or reduced pay, not being denied the benefit of progressive discipline/performance management prior to termination, and/or not being terminated.

212. Upon information and belief, after the Defendant had demoted Mr. Katz from management, the Defendant replaced Mr. Katz with a lesser or similarly qualified, non-disabled and/or younger employee.

213. The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

214. As a direct and proximate result of Defendant's violations of the ADA, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

215.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT X

### (Retaliation in Violation of 29 U.S.C. §§ 621 et seq.)

### Mr. Katz v. Apple, Inc.

216.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

217.    Mr. Katz engaged in protected activity under the ADEA, including, but not limited to, by opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by Defendants due to Mr. Katz's age.

218.    The Defendant retaliated against Mr. Katz and/or discriminated against the Mr. Katz for opposing an act or practice made unlawful by the ADEA, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment because of Mr. Katz's age.

219.    The Defendant willfully violated the ADEA because the Defendant knew or should have known its conduct was prohibited by Federal law and/or the Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Katz.

220.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

221.    Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, liquidated damages (double damages), compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, interest, attorneys' fees, and costs.

## COUNT XI

**(Interference with, and Retaliation for Exercising, Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Mr. Katz v. Apple, Inc.**

222.    Mr. Katz incorporates all paragraphs above and below as if set forth fully herein.

223.    The Defendant is (and all relevant times was) engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar weeks in the current and/or proceeding calendar years.

224.    As such, the Defendant is (and at all relevant times was) an employer under the FMLA.

225.    Mr. Katz was an eligible employee under the FMLA because at all relevant times he had worked for the Defendant for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.  In addition, the Defendant employed 50 or more employees within 75 miles of the location at which Mr. Katz was based.

226.    Mr. Katz suffered from one or more serious health conditions, including chronic debilitating migraines.

227.    Mr. Katz was entitled to FMLA leave and requested information regarding his eligibility and/or entitlement to a protected leave under the FMLA.

228.    Mr. Katz sought to exercise his rights under the FMLA by requesting and/or utilizing FMLA leave, including in the form of intermittent FMLA leave, related to the need to take time off for his serious health condition and/or to undergo treatment for his serious health condition.

229.    The Defendant interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Mr. Katz rights under the FMLA, including, but not limited to, by terminating Mr. Katz after he notified the Defendant of his intent to take FMLA qualified intermittent leave, but before Mr. Katz was able to utilize such leave, using Mr. Katz's FMLA leaves as a negative factor when considering Mr. Katz's employment, and/or threatening Mr. Katz with reprimands if he continued taking FMLA protected leaves.

230.    Indeed, on a number of occasions, Mr. Katz was pressured and/or coerced into not utilizing FMLA protected leave (even though he had been approved for such leave) because the Management Team made clear to Mr. Katz that taking off further FMLA days would be looked at negatively and/or could result in adverse action against Mr. Katz.

231.     In doing so, the Defendant unlawfully denied and/or unlawfully discouraged Mr. Katz's ability to utilize leave under the FMLA.

232.     The Defendant retaliated and/or discriminated against Mr. Katz for requesting and/or utilizing FMLA leave by subjecting Mr. Katz to adverse actions, including, but not limited to, subjecting Mr. Katz to a harassing and otherwise hostile work environment, holding Mr. Katz to a higher standard than his younger colleagues, issuing Mr. Katz pretextual discipline (including a discriminatory/retaliatory and unjustifiably poor performance review), reallocating Mr. Katz's job duties, subjecting Mr. Katz to demotion and reduced pay, denying Mr. Katz the benefit of the full progressive discipline prior to termination, and/or terminating Mr. Katz's employment.

233.     The Defendant's actions were willful and in bad faith.

234.     As a direct and proximate result of the Defendant's violation of the FMLA, Mr. Katz has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

235.     Mr. Katz seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

WHEREFORE, the plaintiff, David Katz, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury, and;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff monetary damages, including, but not limited to, back pay, lost compensation and benefits, and front pay;

D.  Award the Plaintiff damages for emotional distress, pain, suffering, mental anguish, and loss of enjoyment of life;

E.  Award the Plaintiff compensatory damages, including, but not limited for future pecuniary losses and inconvenience;

F.  Award the Plaintiff other monetary damages for other monetary harms suffered;

G.  Award the Plaintiff damages for harm to reputation and reduced earning capacity;

H.  Award the Plaintiff liquidated (i.e. double) damages;

I.  Award the Plaintiff punitive damages;

J.  Award the Plaintiff his reasonable attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

DAVID KATZ

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:  November 3, 2020          By:      /s/ Michael R. Varraso

Benjamin J. Wyatt, 5604590
BWyatt@Wyattlegalservices.com


Michael Varraso, 958184
mvarraso@wyattlegalservices.com


The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

NY Office: 418 Broadway, 2nd floor
Albany, NY 12207